ACCEPTED
03-16-00867-CV
14440701
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/23/2016 1:00:46 PM
JEFFREY D. KYLE
CLERK

NO. 03-16-00867-CV

IN THE THIRD DISTRICT COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/23/2016 1:00:46 PM
JEFFREY D. KYLE
Clerk

## IN RE NATURAL SODA, LLC,

### *RELATOR*

Original Proceeding from Cause No. D-1-GN-15-005653
In the 200th Judicial District Court of Travis County, Texas
(Hon. Gisela D. Triana, Presiding)

## PETITION FOR WRIT OF MANDAMUS

Matthew Dow
   State Bar No. 06066500
Joshua A. Romero
   State Bar No. 24046754
JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701

William N. Withrow Jr.
   *Pro Hac Vice*
Michael E. Lacy
   *Pro Hac Vice*
David Gettings
   *Pro Hac Vice*
TROUTMAN SANDERS LLP
22 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462

ATTORNEYS FOR RELATOR NATURAL SODA, LLC

## IDENTITIES OF PARTIES AND COUNSEL

The following is a complete list of all parties before the trial court and the names and addresses of all trial counsel and appellate counsel:

| 1. | **Relator** | Defendant/Counterclaim Plaintiff Natural Soda, LLC |
|---|---|---|

|  | Represented by: | Matthew Dow |
|---|---|---|
|  |  | Joshua A. Romero |
|  |  | JACKSON WALKER L.L.P. |
|  |  | 100 Congress Avenue, Suite 1100 |
|  |  | Austin, Texas 78701 |
|  |  | 512.236.2230 – Telephone |
|  |  | 512.391.2113 – Facsimile |

*and*

William Withrow (*pro hac vice*)
David Gettings (*pro hac vice*)
Michael Lacy (*pro hac vice*)
TROUTMAN SANDERS LLP
222 Central Park Ave, Suite 2000
Virginia Beach, VA 23462
757.687.7747 – Telephone
757.687.1545 – Facsimile

| 2. | **Real Party in Interest** | Plaintiff/Counterclaim Defendant Bunnett & Company, Inc. |
|---|---|---|

|  | Represented by: | Matthew F. Prewitt |
|---|---|---|
|  |  | Michael Molzberger |
|  |  | SCHIFF HARDIN LLP |
|  |  | 233 S. Wacker Drive, Suite 6600 |
|  |  | Chicago, Illinois 60606 |
|  |  | 312.258.5583 - Telephone |
|  |  | 312.258.5600 - Facsimile |

*and*

Michael J. Golden
BOULETTE GOLDEN & MARIN LLP
2801 Via Fortuna, Suite 530
Austin, Texas 78746
512.732.8900 - Telephone
512.732.8905 – Facsimile

3.    **Respondent**                Hon. Gisela D. Triana
                                     200th District Court at Travis County, Texas
                                     1000 Guadalupe, 5th Floor
                                     Austin, Texas 78701
                                     512.854-9306 - Telephone
                                     512.854.4523 – Facsimile

4.    **Additional Parties in**     Defendant Enirgi Group Corporation
      **Trial Court and Non-**      Defendant Sara Schaeffner
      **Parties to Mandamus**       Represented by:
      **Proceeding**                Matthew Dow
                                     JACKSON WALKER L.L.P.
                                     100 Congress Avenue, Suite 1100
                                     Austin, Texas 78701
                                     512.236.2230 – Telephone
                                     512.391.2113 – Facsimile

                                     *and*

                                     William Withrow (*pro hac vice*)
                                     David Gettings (*pro hac vice*)
                                     Michael Lacy (*pro hac vice*)
                                     TROUTMAN SANDERS LLP
                                     222 Central Park Ave, Suite 2000
                                     Virginia Beach, VA 23462
                                     757.687.7747 – Telephone
                                     757.687.1545 – Facsimile

Plaintiff and Third-Party Defendant William Bunnett
Plaintiff Energy Feeds International, LLC
Represented by:
Matthew F. Prewitt
Michael Molzberger
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
312.258.5583 - Telephone
312.258.5600 - Facsimile

*and*

Michael J. Golden
BOULETTE GOLDEN & MARIN LLP
2801 Via Fortuna, Suite 530
Austin, Texas 78746
512.732.8900 - Telephone
512.732.8905 - Facsimile

# TABLE OF CONTENTS

Identities of Parties and Counsel ..................................................................................ii

Table of Authorities ...................................................................................................vii

Statement Regarding Oral Argument..........................................................................x

Statement of the Case ................................................................................................xi

Statement of Jurisdiction...........................................................................................xii

Issues Presented..........................................................................................................1

Mandamus Record .....................................................................................................2

Statement of Facts.......................................................................................................3

 I.  The Parties ..............................................................................................3

 II.  The Lawsuit and Temporary Restraining Order............................................4

 III. Bunnett & Co.'s Motion for Contempt and Sanctions................................5

 IV. The Contempt Hearing.............................................................................6

 V.  The Contempt Order ................................................................................9

Argument....................................................................................................................10

 I.  The Trial Court's Contempt Power ..........................................................10

 II.  Mandamus Relief is Available to Correct the Trial Court's Erroneous Contempt Order .......................................................................12

 III. The Trial Court Abused its Discretion in Issuing the Contempt Order, and Natural Soda Has No Adequate Remedy by Appeal.............13

   A. The Trial Court Clearly Abused Its Discretion in Holding Natural Soda in Criminal Contempt .................................................13

1. There is no evidence Natural Soda solicited business from Hi-Pro in the restricted area on December 18, 2015, in violation of the TRO .................................................14

2. Even assuming a violation of the TRO, there is no evidence that Natural Soda acted with willful intent ..........20

B. Natural Soda Has No Adequate Remedy by Appeal.......................21

Prayer.................................................................................................................................23

Rule 52.3(j) Certification .................................................................................................24

Rule 9.4 Certificate of Compliance................................................................................24

Certificate of Service.........................................................................................................25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Deramus v. Thornton,*
 333 S.W.2d 824 (Tex. 1960) ................................................................13

*Ex parte Chambers,*
 898 S.W.2d 257 (Tex. 1995) (orig. proceeding) .................................. 11, 12, 14, 20

*Ex parte Elmore,*
 342 S.W.2d 558 (Tex. 1961) (orig. proceeding) ........................................11, 16, 17

*Ex parte Gordon,*
 584 S.W.2d 686 (Tex. 1979) (orig. proceeding) ......................................................11

*Ex parte Green,*
 603 S.W.2d 216 (Tex. 1980) (orig. proceeding) ........................................12, 18, 19

*Ex parte Price,*
 741 S.W.2d 366 (Tex. 1987) (orig. proceeding) ......................................................14

*Ex parte Sanchez,*
 703 S.W.2d 955 (Tex. 1986) (orig. proceeding) ......................................................12

*Ex parte Stephens,*
 734 S.W.2d 761 (Tex. App.—Fort Worth 1987, orig. proceeding) ....................18

*Ex parte Storlie,* No. 07-98-0040-CV, 1998 Tex. App. LEXIS 1427
 (Tex. App.—Amarillo Mar. 9, 1998, orig. proceeding)........................................18

*Ex parte Sweeney,*
 628 S.W.2d 855 (Tex. App.—Fort Worth 1982, orig. proceeding)
 (per curiam)................................................................................................................20

*Ex parte Werblud,*
 536 S.W.2d 542 (Tex. 1976) (orig. proceeding) ............................................. 10, 11

*Hood v. United States,*
 326 F.2d 33 (5th Cir. 1964) ...................................................................................11

*In re Choice! Energy, L.P.*,
    325 S.W.3d 805 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ...........16

*In re D.A.*, No. 02-14-00198-CV, 2014 Tex. App. LEXIS 9018
    (Tex. App.—Fort Worth Aug. 14, 2014, orig. proceeding)
    (per curiam)..............................................................................................22

*In re Khaledi*,
    138 S.W.3d 77 (Tex. App.—San Antonio 2004, orig. proceeding) .....................18

*In re Long*,
    984 S.W.2d 623 (Tex. 1999) (orig. proceeding) .....................................................12

*In re Maddin*, No. 2-08-475-CV, 2009 Tex. App. LEXIS 2828
    (Tex. App.—Fort Worth Apr. 20, 2009, orig. proceeding) (mem. op.) ..............14

*In re Office of Att'y Gen. of Tex.*,
    215 S.W.3d 913 (Tex. App.—Fort Worth 2007, orig. proceeding) .....................22

*In re Reece*,
    341 S.W.3d 360 (Tex. 2011) (orig. proceeding) ............................................... 11, 12

*In re Smith*,
    310 S.W.3d 908 (Tex. App.—Eastland 2010, orig. proceeding) ................... 17, 19

*In re Stanley*, No. 04-06-00549-CV, 2006 Tex. App. LEXIS 7635
    (Tex. App.—San Antonio Aug. 30, 2006, orig. proceeding)
    (per curiam) (mem. op.) ..........................................................................................14

*Kinney v. Barnes*,
    443 S.W.3d 87 (Tex. 2014) .....................................................................................16

*Rowe v. Moore*,
    756 S.W.2d 117 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding)............20

*Urbano v. State*,
    837 S.W.2d 114 (Tex. Crim. App. 1992) ................................................................17

**<u>Statute</u>**

TEX. GOV'T CODE § 21.002(b)..............................................................................10

**<u>Other Authority</u>**

9 WILLIAM V. DORSANEO, III,
      TEX. LIT. GUIDE § 133.04[6][b] (2016) ............................................................ 11, 17

## STATEMENT REGARDING ORAL ARGUMENT

Relator Natural Soda, LLC submits that oral argument is not necessary for the Court's analysis of the criminal contempt order at issue. This case involves a straight-forward application of the evidentiary standard for criminal contempt findings—*i.e.*, beyond a reasonable doubt—to the evidence presented to the trial court. If, however, the Court determines that oral argument will assist it in making a decision, counsel for Relator requests to be heard.

## STATEMENT OF THE CASE

*Underlying Suit:*  Real Party in Interest/Plaintiff Bunnett & Company, Inc. ("Bunnett & Co.") filed a breach-of-contract case against Relator/Defendant Natural Soda, LLC ("Natural Soda") arising from the termination of a sodium bicarbonate distributorship agreement. Natural Soda filed various counterclaims arising from Bunnett & Co.'s material breaches of the distributorship agreement.

The trial court entered a temporary restraining order restricting Natural Soda's ability to solicit business from certain customers under certain conditions for a two-day period. (Tab A). Bunnett & Co. subsequently sought sanctions and contempt against Natural Soda and others for allegedly violating the temporary restraining order.

On November 17, 2016, the trial court entered an order finding Natural Soda in criminal contempt for purportedly soliciting business from one customer during the effective date of the temporary restraining order.

Jury trial is scheduled for January 9, 2017.

*Respondent:*  The Honorable Gisela D. Triana of the 200th Judicial District Court of Travis County, Texas

*Action from which Relator seeks relief:*  On November 17, 2016, the trial court found Natural Soda in criminal contempt for allegedly soliciting business from one customer during the two-day period the temporary restraining order was in place. (Tab B). Because Natural Soda will suffer irreparable harm from the contempt order, particularly with the impending jury trial, Natural Soda respectfully seeks relief from the contempt order.[1]

---

[1] Temporary relief in the form of a stay may be necessary if the trial court permits Bunnett & Co. to mention the criminal contempt finding to the jury or to otherwise disclose the contempt finding to the jury through a jury instruction, as Bunnett & Co. has requested. *See* R.R.2, pp. 41:22-25, 42:1-12.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to issue a writ of mandamus pursuant to Article 5, Section 6 of the Texas Constitution and Section 22.221 of the Texas Government Code.

## ISSUES PRESENTED

1.    Whether the trial court abused its discretion in finding, beyond a reasonable doubt, that Natural Soda violated the temporary restraining order by soliciting business from one customer, when there was no evidence that Natural Soda solicited that customer's business during the two-day period the temporary restraining order was in effect?

2.    Whether the trial court abused its discretion in finding, beyond a reasonable doubt, that Natural Soda acted with willful intent to violate the temporary restraining order by allegedly soliciting business from one customer during the two-day period the order was in place, when the only evidence of Natural Soda's intent showed that it acted in good faith?

1

## MANDAMUS RECORD

The sworn mandamus record is cited as "Tab ___, p. ___." The Reporter's Record is composed of three volumes containing the testimony and evidence adduced at the contempt hearing. The Reporter's Record is cited as "R.R.___, p. ___."[2]

---

[2]      Relator's counsel received the Reporter's Record on December 19, 2016.

2

# STATEMENT OF FACTS

## I. THE PARTIES

Natural Soda is one of North America's leading producers of sodium bicarbonate (better known as baking soda) for use predominantly in the food, industrial, and animal feed markets. Tab C ¶ 7. Bunnett & Co. is a distributor of sodium bicarbonate to end-users. *Id.* ¶ 8.

In September 2005, Natural Soda entered into an Animal Feed Distributor Agreement with Bunnett & Co. (the "Agreement"). *Id.* ¶ 8. The Agreement appointed Bunnett & Co. as Natural Soda's exclusive sales representative for the solicitation of orders for feed-grade sodium bicarbonate within a fifteen-state sales territory. *Id.*; R.R.3, Pls. Ex. 4.

On December 2, 2015, Natural Soda terminated the Agreement based on Bunnett & Co.'s repeated material breaches of the Agreement. Tab C ¶ 39. After termination, Natural Soda began contacting customers who had previously purchased its sodium bicarbonate to assess their interest in purchasing directly from Natural Soda. R.R.2, pp. 44:1-13, 73:9-25, 74:1-13.

## II.   THE LAWSUIT AND TEMPORARY RESTRAINING ORDER

On December 14, 2015, Bunnett & Co. sued Natural Soda based on Natural Soda's termination of the Agreement.  Tab C ¶ 40.[3]  The crux of Bunnett & Co.'s claim is that Natural Soda did not provide Bunnett & Co. with a ten-day notice of termination, which Bunnett & Co. claims is required.  R.R.2, p. 16:21-24.  Bunnett & Co. also sought injunctive relief to force Natural Soda to comply with the exclusivity provision in the Agreement.  Tab C ¶ 40.  Natural Soda opposed the request for injunctive relief, arguing that equitable relief was unavailable and inappropriate in a breach-of-contract case.  Tab E.

The trial court heard the application for a temporary restraining order on December 15, 2015, and issued a temporary restraining order on December 16, 2015 (the "TRO").  Tab A.  The TRO provided in pertinent part:

> Defendant shall honor its exclusivity obligations with respect to Plaintiff, provided, except Defendant may sell to a third party who had, prior to December 15, 2015, communicated to Defendant that it refused to do business with Plaintiff.  This limited exception does not apply to people who communicate such issues on or after December 15, 2015, for which Plaintiff's exclusivity still applies until the expiration of this court order.

---

[3]    Bunnett & Co. later amended the petition to add two additional defendants: Sara Schaeffner (Natural Soda's president) and Enirgi Group Corporation (Natural Soda's parent company).  Natural Soda filed counterclaims against Bunnett & Co. and a third-party claim against its owner, William Bunnett.  Tab C.

*Id.* at ¶ 4. The TRO's restriction on Natural Soda's ability to sell product to certain customers expired by its terms on December 18, 2015. *Id.* at ¶ 2.[4] There was not a preliminary injunction hearing and no preliminary injunction order was entered.

## III. BUNNETT & CO.'S MOTION FOR CONTEMPT AND SANCTIONS

On September 21, 2016, Bunnett & Co. filed a motion for sanctions and contempt. Bunnett & Co. argued, in relevant part, that Natural Soda, Defendant Sara Schaeffner (Natural Soda's president), Non-Party Wayne Richardson (CEO of Natural Soda's parent company, Enirgi Group Corporation), and Non-Party Jackie Deiter (Natural Soda's sales representative) (collectively "Respondents") should be held in criminal contempt for violating the TRO. Tab D. Specifically, Bunnett & Co. alleged that the Respondents violated the TRO by soliciting business from six customers—Hi-Pro Feeds, Mission Ag Resources, J.D. Heiskell-Idaho, Nutrius LLC, J.D. Heiskell-California, and Pacific Elements—during the two-day period in which the TRO was in effect. *Id.* at pp. 14-16.[5]

---

[4] The TRO provided that it was "vacated without further order of the Court" if Bunnett & Co. failed to submit to Natural Soda signed orders from clients by December 18, 2015 at 5:00 p.m. in excess of the contractual minimums. Tab A ¶ 2. It is undisputed that Bunnett & Co. failed to submit the requisite orders; therefore, it is also undisputed that the TRO expired by its terms at 5:00 p.m. on December 18, 2015. Tab C ¶¶ 41-42; R.R.2, pp. 47:21-23, 97:12-15.

[5] Bunnett & Co. made additional accusations in its motion regarding alleged pre-TRO conduct and discovery conduct, which Respondents adamantly denied. The trial court ultimately rejected Bunnett & Co.'s arguments and therefore they are irrelevant in this mandamus proceeding. *See* Tab B, p. 2.

Respondents filed a response to the motion for sanctions and contempt, explaining the inaccuracies and misstatements contained in the motion. Tab E. Respondents provided evidence that (i) they only solicited business from customers who refused to do business with Bunnett & Co. before December 15, 2015, as permitted by the TRO; and (ii) Respondents did not solicit business from any restricted customers in the relevant markets during the effective dates of the TRO. *Id.* On October 14, 2016, pursuant to Bunnett & Co.'s request, the trial court issued a show-cause order directing Respondents to show cause why they did not violate the TRO. Tab F.[6]

## IV. THE CONTEMPT HEARING

On November 7, 2016, the trial court conducted a show-cause hearing. The trial court heard live testimony from four witnesses and deposition testimony from several other witnesses. *See generally* R.R.1-R.R.3. Natural Soda presented deposition testimony from four of the customers at issue: Pacific Elements,[7] J.D. Heiskell-California,[8] Animal Nutrition System,[9] and J.D. Heiskell-Idaho.[10] Their testimony

---

[6] The trial court considered Bunnett & Co.'s motion for contempt and sanctions on October 13, 2015, but did not issue a ruling on that date; instead, the trial court set an evidentiary hearing on the motion for November 7, 2015. Tab F.

[7] R.R.2, pp. 140-42.

[8] *Id.* at pp. 141-43.

[9] *Id.* at pp. 144-45.

[10] *Id.* at pp. 145-47.

6

corroborated the testimony of Non-Party Jackie Deiter (Natural Soda's sales representative) that each customer had expressed an unwillingness to conduct business with Bunnett & Co. R.R.2, pp. 152:21-25, 153:1. The testimony from each of these customers was striking in the consistent disdain for Bunnett & Co. and their intention to take their business elsewhere. For instance, Pacific Elements' representative testified as follows:

Q: So as long as you were able to get Natural Soda sodium bicarbonate on a reliable basis at a fair price, you still would have been willing to purchase it through Bunnett & Co. Right?

A: No.

Q: Why not?

A: Because their customer service is horrible. At that point, if we couldn't get Natural Soda, we would have moved to Church & Dwight and bought their products.

R.R.2, pp. 140:22-25, 141:1-6.[11]

In support of its motion, Bunnett & Co. introduced evidence of one phone record showing that, on December 18, 2015, a representative of Hi-Pro Feeds ("Hi-Pro") placed a call to Natural Soda. The phone record provides as follows:

| Date | Time | Caller | Customer/Individual | Callee | Direction | Duration (min) | Source |
|------|------|--------|--------------------|--------|-----------|----------------|--------|
| 2015-12-18 | 14:17 | 8065590517 | Jason Rector (Hi-Pro) | Jackie Deiter | In | 7 | NS_3758 |

---

[11] This testimony is consistent with the testimony of other customers. *See, e.g.,* R.R.2, p. 143 (J.D. Heiskell: "I don't want to have any dealings to do with Bunnetts anymore."); *Id.* at p. 144 (Animal Nutrition System: "[Y]es, it was a kind of refusal and basically saying, we don't want to [do business with Bunnett & Co.]."); *Id.* at p. 145 (J.D. Heiskell: "I wasn't happy with Bunnett & Company. They-they really ticked my customers off.").

Tab G; R.R.3, Pls. Ex. 16. The phone record shows that the call lasted *seven minutes*, and was placed *from* Hi-Pro *to* Natural Soda. *Id.* Bunnett & Co. did not introduce any evidence about the substance of the call or ask Non-Party Jackie Deiter (the recipient of the call and a witness at the hearing) about the call.

At the conclusion of the hearing, the trial court expressed concern regarding Natural Soda's contact with one customer, Hi-Pro. R.R.2, p. 206. Notably, the phone record above encompassed the entirety of the evidence introduced at the contempt hearing regarding Natural Soda's communications with Hi-Pro from December 16, 2015 (the date the TRO was entered) to December 18, 2015 (the date the TRO expired). R.R.3, Pls. Ex. 16.

Bunnett & Co.'s "evidence" of Natural Soda's communications with Hi-Pro stopped there. Bunnett & Co. did not adduce any evidence regarding the substance of that single call; Bunnett & Co. did not introduce evidence regarding the reason Hi-Pro called Natural Soda on December 18, 2015; there was no testimony or evidence from Hi-Pro about the call; Bunnett & Co. did not solicit any evidence from Jackie Deiter about the call; and, most critically, there was no evidence that, during the seven-minute call, Jackie Deiter solicited or even attempted to solicit Hi-Pro to purchase sodium bicarbonate from Natural Soda in the restricted area. Indeed, the only evidence presented at the hearing about that call is the phone record itself. Tab G; R.R.3, Pls. Ex. 16.

8

Importantly, the TRO did not prevent Natural Soda from talking to any person or entity; it only prevented Natural Soda from "sell[ing]" sodium bicarbonate to certain customers in the restricted area from December 16 to December 18, 2015. *See* Tab A ¶ 2. Thus, the critical question is whether Natural Soda was "selling" any sodium bicarbonate to Hi-Pro within the restricted area during the seven-minute phone call on December 18, 2015.[12]

## V.    THE CONTEMPT ORDER

On November 16, 2016, the trial court issued an order finding Natural Soda in criminal contempt for soliciting sodium bicarbonate business from Hi-Pro in the restricted area during the two-day period in which the TRO was in effect. Tab B. Specifically, the trial court found the following:

> The Court . . . finds beyond a reasonable doubt that Natural Soda violated this Court's Temporary Restraining Order entered on December 16, 2016 [sic], by breaching the exclusivity provisions in the agreement between the parties. The Court specifically finds beyond a reasonable doubt that, after the hearing on Bunnett & Company's petition for a temporary restraining order and after the Court entered the Temporary Restraining Order on December 16, 2016 [sic], Natural Soda conducted business negotiations with Hi-Pro Feeds in an effort to convince Hi-Pro Feeds to purchase sodium bicarbonate directly from Natural Soda, even though Hi-Pro Feeds has not refused to do business with Bunnett & Company.

Tab B.

---

[12]    Natural Soda and Hi-Pro also conduct business in Canada, which is indisputably outside the scope of both the TRO and the fifteen-state exclusive distributorship area covered by the Agreement. *See* R.R.2, p. 209:15-16; Tab C ¶ 8.

Pursuant to the statutory limitations set forth in TEX. GOV'T CODE § 21.002(b), the trial court imposed a monetary fine of $500 on Natural Soda. *Id.* p. 2 ("[I]t is ORDERED that Natural Soda be found guilty of contempt and fined $500 pursuant to TEX. GOV'T CODE § 21.002(b)."). The trial court denied all other relief Bunnett & Co. requested in its motion for sanctions and contempt. *Id.* ("All other relief not expressly granted herein is DENIED.").

As discussed below, the trial court abused its discretion in finding Natural Soda in contempt, and Natural Soda lacks an adequate remedy on appeal. Accordingly, mandamus relief is appropriate.

## ARGUMENT

### I.   THE TRIAL COURT'S CONTEMPT POWER.

There are two types of contempt: (1) civil contempt; and (2) criminal contempt. Civil contempt is "remedial and coercive in nature" with the goal of persuading the contemnor to obey an order of the court. *See Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding). Criminal contempt, on the other hand, is punitive in nature; the punishment "is not conditioned upon some promise of future performance because the contemnor is being punished for some completed

act. . . ." *Id.*[13]   In this case, the trial court expressly found Natural Soda in *criminal*

*contempt* because it sought to punish Natural Soda for alleged completed acts. Tab B.[14]

Criminal contempt "for disobedience to a court order requires *proof beyond a*

*reasonable doubt* of: (1) a reasonably specific order; (2) a violation of the order; and (3)

the willful intent to violate the order." *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex.

1995) (orig. proceeding) (emphasis added).  A party accused of contempt is presumed

innocent, and the movant "has the burden of proving guilt beyond a reasonable

doubt." *Hood v. United States*, 326 F.2d 33, 34 (5th Cir. 1964); *see also* 9 WILLIAM V.

DORSANEO, III, TEX. LIT. GUIDE § 133.04[6][b] (2016) ("DORSANEO") ("[T]he

moving party bears the burden of pleading, producing evidence, and persuading the

trier of fact regarding each element of the offense.").  Notably, "contempt is not

presumed to exist but rather is presumed *not to exist*." DORSANEO at § 133.04[1]

(emphasis added) (citing *Ex parte Elmore*, 342 S.W.2d 558, 561 (Tex. 1961) (orig.

proceeding)).

---

[13]     The "distinction between criminal and civil contempt does not turn on whether the underlying litigation is civil or criminal, but rather on the nature of the court's punishment." *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding).

[14]     In addition to categorizing contempt as criminal or civil, contempt is also sometimes classified as "direct" or "constructive."  Direct contempt occurs in the presence of the court, and constructive contempt occurs outside the court's presence. *See Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding).  The contempt in this case is properly classified as constructive contempt because the alleged violation occurred outside of the court's presence.  The distinction is significant because cases of constructive contempt are afforded greater procedural protection. *See Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding) (holding that due process requires constructive contemptor to be given full and complete notification of charge and right to defend).

11

The Texas Supreme Court has recognized that contempt proceedings are quasi-criminal and that, although the power of contempt is broad, it "is a tool that should be exercised with caution." *Reece*, 341 S.W.3d at 364; *see also Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986) (orig. proceeding). Indeed, the Supreme Court has cautioned that contempt is "strong medicine" and "should be used only as a last resort." *Reece*, 341 S.W.3d at 364 (internal citations omitted).

## II. MANDAMUS RELIEF IS AVAILABLE TO CORRECT THE TRIAL COURT'S ERRONEOUS CONTEMPT ORDER.

It is well settled that "mandamus is available to challenge an order of contempt not involving confinement." *Reece*, 341 S.W.3d at 370. As the Texas Supreme Court has explained, "[c]ontempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of mandamus." *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding).

To obtain mandamus relief, a relator must demonstrate that (1) the trial court clearly abused its discretion, and (2) the relator has no adequate remedy by appeal. *Reece*, 341 S.W.3d at 364. On mandamus review, this Court should void a contempt order when there is "no evidence to support" the contempt finding. *Chambers*, 898 S.W.2d at 259 (voiding contempt order because no evidence supported contempt finding); *Ex parte Green*, 603 S.W.2d 216, 217 (Tex. 1980) (orig. proceeding) ("Since we are of the opinion that the record contains no evidence to support the present contempt order, we hold that the contempt order is void, and order the relator

12

discharged."); *Deramus v. Thornton*, 333 S.W.2d 824, 830 (Tex. 1960) ("A judgment of contempt without support in the evidence is void, and the Court is without jurisdiction to order punishment in the absence of some evidence of contemptuous disobedience.").

## III. THE TRIAL COURT ABUSED ITS DISCRETION IN ISSUING THE CONTEMPT ORDER, AND NATURAL SODA HAS NO ADEQUATE REMEDY BY APPEAL.

Mandamus relief is appropriate in this case because: (1) the trial court clearly abused its discretion in finding Natural Soda in criminal contempt; and (2) Natural Soda has no adequate remedy by appeal. These two elements are discussed below.

### A. The Trial Court Clearly Abused Its Discretion in Holding Natural Soda in Criminal Contempt.

As a threshold matter, the trial court had to find *beyond a reasonable doubt* that Natural Soda violated the TRO. Here, there is no evidence in the record—much less evidence beyond a reasonable doubt—to support the trial court's finding that Natural Soda solicited Hi-Pro's sodium bicarbonate business in the restricted area during the seven-minute phone call on December 18, 2015. Accordingly, as discussed below, the contempt order is void as a matter of law.

Further, even assuming there was a violation of the TRO, which there was not, Bunnett & Co. failed to meet its burden to prove beyond a reasonable doubt that Natural Soda acted with *willful intent* to violate the order. Thus, the contempt order is also void on this independent basis.

1.    **There is no evidence Natural Soda solicited business from Hi-Pro in the restricted area on December 18, 2015, in violation of the TRO.**

Bunnett & Co. sought sanctions and contempt against Respondents on various grounds—all of which the trial court rejected with one exception. *Compare* Tab D (motion for sanctions and contempt) *with* Tab B (contempt order). Specifically, while dismissing nearly all of Bunnett & Co.'s arguments, the trial court found criminal contempt on one basis:

> The Court specifically finds beyond a reasonable doubt that . . . after the Court entered the Temporary Restraining Order on December 16, 2016 [sic], Natural Soda conducted business negotiations with Hi-Pro Feeds in an effort to convince Hi-Pro Feeds to purchase sodium bicarbonate directly from Natural Soda, even though Hi-Pro Feeds had not refused to do business with Bunnett & Company.

Tab B, p. 1.[15]

The relevant inquiry here is whether the record evidence supports the trial court's finding that Bunnett & Co. established beyond a reasonable doubt that, between December 16 and December 18, 2015, Natural Soda "conducted business

---

[15]    The trial court correctly rejected Bunnett & Co.'s arguments regarding alleged conduct that occurred before the TRO issued, since such conduct cannot form the basis of a contempt finding. Tab B. Indeed, Texas courts have long recognized that an alleged "contemnor cannot be held in constructive contempt of court for actions taken prior to the time that the court's order is reduced to writing." *Chambers*, 898 S.W.2d at 262 (citing *Ex parte Price*, 741 S.W.2d 366, 367 (Tex. 1987) (orig. proceeding)); *see also In re Stanley*, No. 04-06-00549-CV, 2006 Tex. App. LEXIS 7635, at *2 (Tex. App.—San Antonio Aug. 30, 2006, orig. proceeding) (per curiam) (mem. op.); *In re Maddin*, No. 2-08-475-CV, 2009 Tex. App. LEXIS 2828, at *6–7 (Tex. App.—Fort Worth Apr. 20, 2009, orig. proceeding) (mem. op.).

In any event, Respondents' conduct prior to the entry of TRO fully complied with the TRO, and the trial court agreed. Tab B. But, as set out above, pre-TRO conduct is irrelevant for the purpose of a contempt finding. *See Chambers*, 898 S.W.2d at 262.

14

negotiations with Hi-Pro Feeds in an effort to convince Hi-Pro Feeds to purchase sodium bicarbonate directly from Natural Soda" in the restricted territory. Tab B. Bunnett & Co. introduced one piece of evidence regarding Natural Soda's communication with Hi-Pro between December 16 (the date the TRO was entered) and December 18, 2015 (the date the TRO expired): A phone record from December 18, 2015 at 2:17 p.m. reflecting an *incoming* call from Hi-Pro to Natural Soda lasting seven minutes. Tab G; R.R.3, Pls. Ex. 16.

The phone record is the entirety of Bunnett & Co.'s evidence regarding Natural Soda's communication with Hi-Pro during the effective date of the TRO. Bunnett & Co. did not introduce any evidence about the substance of the call or ask Non-Party Jackie Deiter (the recipient of the call and a witness at the hearing) anything about the call. Instead, the trial court simply *assumed* that, during the seven-minute call, Natural Soda "conducted business negotiations with Hi-Pro Feeds in an effort to convince Hi-Pro Feeds to purchase sodium bicarbonate directly from Natural Soda" in the restricted territory. Tab B. There is, however, no evidence to support that assumption, much less evidence to prove it beyond a reasonable doubt.

In fact, an equally plausible assumption (and a more appropriate one) regarding the substance of the call is that Natural Soda and Hi-Pro discussed their agreement about the direct supply of product to *Canada*—a location and transaction well outside both the scope of the TRO and the fifteen-state exclusivity area in the Agreement. *See* R.R.2, p. 209:15-16 (Natural Soda was in discussions with Hi-Pro regarding an

15

agreement covering Canada, which is outside the exclusive territory covered by the Agreement); R.R.3, Pls. Ex. 4 (listing fifteen-state area of exclusivity agreement). Instead of making that plausible assumption, and contrary to the Texas Supreme Court's directive to presume *innocence* in the contempt context, the trial court inappropriately assumed *guilt. See Ex parte Elmore*, 342 S.W.2d 558, 561 (Tex. 1961) (orig. proceeding) ("A person is not presumed to be in contempt but, rather subject to proof, is presumed not to be.").

Bunnett & Co. did not introduce a single shred of evidence to support the trial court's assumption of guilt. Certainly the fact that Hi-Pro placed a phone call to Natural Soda does not violate the TRO, since the TRO did not prevent all communications with customers. Nor could it have done so.[16] The TRO only prevented direct *sales* to certain customers in the restricted area. Tab A ¶ 4. Therefore, the trial court would have abused its discretion to hold Natural Soda in contempt for a mere communication with Hi-Pro. *See In re Choice! Energy, L.P.*, 325 S.W.3d 805, 809 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("A contempt order is void when it purports to punish the contemnor for conduct that is beyond the scope of the trial court's prior order or decree.").

---

[16] The Texas Supreme Court has recognized the inappropriateness of attempting to impose prior restraint on speech through an injunction. *Kinney v. Barnes*, 443 S.W.3d 87, 89 (Tex. 2014) (holding that an injunction on future speech constitutes an inappropriate "prior restraint that impermissibly risks chilling constitutionally protected speech").

But the trial court did not find contempt merely because there was a communication between Hi-Pro and Natural Soda; it found contempt because Natural Soda allegedly "conducted business negotiations with Hi-Pro Feeds in an effort to convince Hi-Pro Feeds to purchase sodium bicarbonate directly from Natural Soda" in the restricted territory. Tab B. However, since Bunnett & Co. provided no evidence of the substance of the *incoming* call that formed the basis of the trial court's finding, a conclusion about the content of the conversation could not have been proven beyond a reasonable doubt. *See Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992) ("Proof beyond a reasonable doubt means proof to a high degree of certainty. If the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient.") (internal citations omitted). And, as mentioned above, the trial court's *assumption* that Natural Soda violated the TRO during the call ignores that "contempt is not presumed to exist but rather is presumed *not to exist*." DORSANEO at § 133.04[1] (emphasis added) (citing *Elmore*, 342 S.W.2d at 561); *see also In re Smith*, 310 S.W.3d 908, 916-17 (Tex. App.—Eastland 2010, orig. proceeding) (voiding contempt order because trial court "impermissibly presumed, without evidentiary support," that non-movant violated injunction).

The Texas Supreme Court's analysis in *Ex parte Green*, 603 S.W.2d 216 (Tex. 1980) (orig. proceeding), is instructive.[17] In *Green*, the trial court enjoined Mr. Green from conducting certain illegal activities on his premises. *Id.* at 217. After the injunction issued, the plaintiff sought contempt against Mr. Green based on post-injunction illegal activity at the premises. After a hearing, the trial court found Mr. Green in contempt for violating the injunction. Mr. Green sought mandamus relief in the court of appeals and subsequently at the Texas Supreme Court. The Supreme Court voided the contempt order because the plaintiff failed to produce any evidence that Mr. Green owned the property when the post-injunction illegal activity occurred. *Id.* at 217-18. Instead, the trial court impermissibly *assumed* that Mr. Green owned the property, despite evidence to the contrary. *Id.*

Similar to the trial court in *Green*, the trial court below *assumed* a violation of the TRO, despite Bunnett & Co.'s failure to provide evidence supporting a contempt finding. Indeed, just like the failure of the movant in *Green* to provide evidence that

---

[17] Intermediate appellate court decisions also support mandamus relief when a movant fails to provide evidence to support a contempt finding. *See, e.g., In re Khaledi*, 138 S.W.3d 77, 81 (Tex. App.—San Antonio 2004, orig. proceeding) ("Because no evidence supports a finding that relator's failure to sign the Merrill Lynch agreement constitutes a violation of the injunction order, relator cannot be held in constructive contempt for failing to sign the Merrill Lynch agreement."); *Ex parte Stephens*, 734 S.W.2d 761, 764 (Tex. App.—Fort Worth 1987, orig. proceeding) ("[W]e conclude that the evidence does not support the contempt judgment. No evidence was introduced at trial to show that Stephens was in arrears. The only evidence introduced was that he failed to timely pay."); *Ex parte Storlie*, No. 07-98-0040-CV, 1998 Tex. App. LEXIS 1427, at *7 (Tex. App.—Amarillo Mar. 9, 1998, orig. proceeding) ("Because there is no evidence that Sharon had not remarried, the order finding Harris in contempt is unsupported by evidence essential to an order of contempt.").

Mr. Green owned the property when the alleged criminal activity occurred, Bunnett & Co. failed to provide evidence that Natural Soda "conducted business negotiations with Hi-Pro Feeds in an effort to convince Hi-Pro Feeds to purchase sodium bicarbonate directly from Natural Soda" in the restricted territory during the seven-minute call on December 18, 2015. Because that assumption is the sole basis for the trial court's contempt order, the order fails as a matter of law based on a lack of supporting evidence. *See Green*, 603 S.W.2d at 217-18; *Smith*, 310 S.W.3d at 914 ("A trial court abuses its discretion by entering a contempt judgment that is not supported by evidence, and such a judgment is void.").

****

In short, the trial court's contempt finding, based on a single phone record, that Natural Soda solicited business from Hi-Pro in the restricted area during the seven-minute call lacks any evidentiary support. The trial court necessarily had to *assume* the substance of the call since Bunnett & Co. failed to present any evidence about the content of the call. And the trial court's assumption of guilt is contrary to the Texas Supreme Court's repeated instruction that contempt is not presumed and the movant must establish a violation beyond a reasonable doubt. Bunnett & Co. undoubtedly failed to meet that standard; therefore, the trial court clearly abused its discretion in holding Natural Soda in criminal contempt.

### 2. Even assuming a violation of the TRO, there is no evidence that Natural Soda acted with willful intent.

Assuming *arguendo* that there was a violation of the TRO—which there was not—Bunnett & Co. still failed to prove beyond a reasonable doubt that Natural Soda acted with *willful intent* to violate the TRO. This is fatal to the contempt order.

To succeed on its motion, Bunnett & Co. had to prove beyond a reasonable doubt that Natural Soda acted with a *willful intent* to violate the TRO. *See Chambers*, 898 S.W.2d at 259. Texas courts have recognized that evidence of a non-movant's "good faith action" can negate the element of willful intent. *See, e.g., Ex parte Sweeney*, 628 S.W.2d 855, 858 (Tex. App.—Fort Worth 1982, orig. proceeding) (per curiam) (discharging contempt order because, even though non-movant violated the underlying order, he acted in good faith in attempting to comply with it); *Rowe v. Moore*, 756 S.W.2d 117, 120 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding) (recognizing that non-movant's good faith, but erroneous, attempt to comply with underlying order may preclude contempt finding).

Here, the record is completely devoid of any evidence regarding Natural Soda's willful intent to violate the TRO by answering a phone call placed by Hi-Pro on December 18, 2015. Indeed, the December 18, 2015 call was incoming, meaning the call itself was not even initiated by Natural Soda. Importantly, the only evidence of Natural Soda's intent is that it took significant steps in good faith to comply with the

20

TRO. *See, e.g.,* R.R.2, pp. 81:4-23, 84:19-22, 85:12-25, 88:4-13.[18] Further, since Bunnett & Co. failed to offer any evidence, much less evidence beyond a reasonable doubt, that Natural Soda solicited business from Hi-Pro in the restricted area during the call on December 18, 2015, it could not have established beyond a reasonable doubt that Natural Soda had a willful intent to violate the TRO by answering that incoming call. Indeed, it would be impossible to discern Natural Soda's intent, especially beyond a reasonable doubt, merely from a black-and-white phone record showing that Hi-Pro called Natural Soda.

For this independent reason, the trial court abused its discretion in finding Natural Soda in criminal contempt.

## B. Natural Soda Has No Adequate Remedy by Appeal.

The second showing necessary for mandamus relief is that Natural Soda lacks an adequate remedy on appeal. Natural Soda can easily make this showing because, as

---

[18] There can also be no willful intent to violate the TRO because Natural Soda reasonably believed it had no restrictions in dealing with Hi-Pro. Specifically, Jackie Deiter testified that Hi-Pro informed her, prior to December 15, 2015, that it refused to conduct business domestically with Bunnett & Co. R.R.2, pp. 152:21-25, 153:1; 172:10-12. There was, however, some ambiguous testimony from Hi-Pro that was read at the hearing on this point. Hi Pro's representative testified during deposition that he did not refuse to conduct business with William Bunnett (who owns two separate companies, Bunnett & Co. and Energy Feeds International, LLC) with respect to *potassium carbonate* (not sodium bicarbonate). R.R.2, p. 203:11-25; *see also* R.R.2, p. 154:7-19. But he did *not* testify in the testimony introduced at the hearing that he would continue to purchase *sodium bicarbonate* from *Bunnett & Co.*, which was the relevant question with respect to the TRO. *See id.* at 203:11-25. Besides Hi-Pro, Ms. Deiter's testimony regarding customer refusal was corroborated by every other customer who testified at the hearing. R.R.2, pp. 140:22-25, 141:1-6. Thus, even if reasonable minds could differ on the import of Hi-Pro's testimony, the evidence does not show that Natural Soda had a "willful intent to violate the TRO," much less support such a finding beyond a reasonable doubt.

courts have recognized, "[t]here is no adequate remedy by appeal if a trial court abuses its discretion when holding someone in contempt." *In re D.A.*, No. 02-14-00198-CV, 2014 Tex. App. LEXIS 9018, at *8 (Tex. App.—Fort Worth Aug. 14, 2014, orig. proceeding) (per curiam) (citing *In re Office of Att'y Gen. of Tex.*, 215 S.W.3d 913, 916 (Tex. App.—Fort Worth 2007, orig. proceeding)). Because, as explained above, Natural Soda has established that the trial court abused its discretion in finding Natural Soda in contempt, Natural Soda has necessarily established a lack of an adequate remedy by appeal. *Id.*

Moreover, the factual and procedural posture of this case establish the lack of an adequate remedy on appeal. This case is schedule for jury trial on Monday, January 9, 2017. Tab H. Bunnett & Co. has informed the trial court and Natural Soda's counsel of its intent to inform the jury that Natural Soda was found in contempt for violating the TRO. *See* R.R.2, pp. 41:22-25, 42:1-12. Bunnett & Co. has also expressed an intent to seek a jury instruction explaining the contempt finding. Any such instruction or disclosure to the jury would be highly inappropriate. Indeed, if Bunnett & Co. is permitted to introduce this evidence, it would result in incurable prejudice to Natural Soda that could not be remedied by a subsequent reversal of the contempt order on appeal. The potential harm is particularly acute in this case, where Bunnett & Co. is seeking millions of dollars in actual and punitive damages for various tort claims, including intentional infliction of emotional distress. Thus, for these additional reasons, there is no adequate remedy by appeal.

## PRAYER

Because the trial court abused its discretion by finding Natural Soda, LLC in criminal contempt, and there is not an adequate remedy by appeal, Natural Soda respectfully asks that this Court issue a writ of mandamus requiring the trial court to vacate the contempt order. Relator further requests all other relief to which it may be entitled.

Respectfully Submitted,

By: */s/ Matt Dow*
Matt Dow
   State Bar No. 06066500
   mdow@jw.com
Joshua A. Romero
   State Bar No. 24046754
   jromero@jw.com
**JACKSON WALKER L.L.P**.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
512.236.2230 – Telephone
512.391.2113 – Facsimile

*and*

William Withrow (*pro hac vice*)
   william.withrow@troutmansanders.com
Michael Lacy (*pro hac vice*)
   michael.lacy@troutmansanders.com>
David Gettings (*pro hac vice*)
   david.gettings@troutmansanders.com
**TROUTMAN SANDERS LLP**
222 Central Park Ave, Suite 2000
Virginia Beach, VA 23462
757.687.7747 – Telephone
757.687.1545 – Facsimile

## RULE 52.3(j) CERTIFICATION

I certify that I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

/s/*Joshua A. Romero*
Joshua A. Romero

## RULE 9.4 CERTIFICATE OF COMPLIANCE

This document complies with the typeface retirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface (Garamond) no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), because it contains 5,529 words excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

/s/*Joshua A. Romero*
Joshua A. Romero

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on the following counsel for Real Party in Interested via electronic service and on Respondent via certified mail, return receipt requested, on this 23rd day of December 2016:

**Respondent:**

Hon. Gisela D. Triana
200TH CIVIL DISTRICT COURT
Heman Marion Sweatt
  Travis County Courthouse
1000 Guadalupe, 5th Floor
Austin, Texas  78701

**Counsel for Real Party in Interest, Energy Feeds International, LLC, and William Bunnett:**

Matthew F. Prewitt
Michael Molzberger
SCHIFF HARDIN LLP
233 S Wacker Drive, Suite 6600
Chicago, Illinois  60606

Michael J. Golden
BOULETTE GOLDEN & MARIN LLP
2801 Via Fortuna, Suite 530
Austin, Texas  78746

/s/ *Joshua A. Romero*
Joshua A. Romero

25

17550845v.2